Receipt number AUSFCC-6627216

**THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |
|---|---|
| MARION HIGGINS, | Civil Action No. ____20-1700 C |
| On behalf of herself and all others similarly situated, | **CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES** |
| Plaintiff, | **1. HAZARD PAY** |
| v. | **2. ENVIRONMENTAL DIFFERENTIAL PAY** |
| THE UNITED STATES OF AMERICA, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

**INTRODUCTION**

1.      Each and every day, thousands of Americans pass through airports.  Most, if not all of them, will experience a similar interaction: they will go through a checkpoint and screening process facilitated by the Department of Homeland Security's Transportation Security Administration ("TSA"), and come into close contact with TSA employees, including security personnel and passenger screeners.  Those TSA employees are there for one reason—to keep passengers and the overall airline industry safe.  To do so, those employees must come into close contact with the passengers passing through TSA checkpoints, as part of their screening and security functions.

2.      Unfortunately, and in light of the COVID-19 pandemic, being forced into close contact with travelers presents a severe health risk to TSA employees.  According to a recent article, as of November 17, 2020, a total of 2,885 TSA employees have tested positive for COVID-19, and nine have died.  *See, e.g.*, https://www.usatoday.com/story/travel/news/2020/11/17/denver-international-airport-tsa-screener-dies-

covid-19/6324248002/ (Nov. 17, 2020).

3.      As federal workers—and especially workers whose primary duty is to screen and come into close physical contact with travelers—TSA employees are entitled to hazard and environmental discharge pay under 5 U.S.C. § 5345 and 5 U.S.C. § 5343 due to exposure to virulent biologicals—in this case, COVID-19.  TSA employees are forced to work every day without appropriate protective equipment being provided and other safeguards being taken to reduce their exposure to COVID-19.  And as evident from the number of deaths so far, the risk is not hypothetical.  It is very real.

4.      This class action complaint is brought on behalf of all TSA employees who were not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential for exposure to hazardous micro-organisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

## JURISDICTION AND VENUE

5.      The United States Court of Federal Claims has jurisdiction and venue over this action pursuant to 28 U.S.C. § 1491, 5 U.S.C. § 5545(d), 5 U.S.C. § 5343(c)(4), 28 U.S.C. § 2501, 5 U.S.C. § 701 et seq., 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. § 5596.

## THE PARTIES

6.      Ms. Higgins is an employee of Defendant within the meaning of 29 U.S.C. § 203(e), and within the meaning of Title 5 of the U.S. Code, specifically, 5 U.S.C. §§ 2105, 5541.

7.      Ms. Higgins is employed by Defendant as a Behavior Detection Officer ("BDO"), Transportation Security Officer ("TSO"), and Lead Transportation Security Officer ("Lead TSO"). Ms. Higgins has served in one or more of these roles since March 21, 2004. Ms. Higgins works at the Los Angeles International Airport ("LAX") and makes $26/hour.

-2-

## CLASS DEFINITIONS

8.     Ms. Higgins bring hazardous duty pay claims on behalf of the following category of similarly situated individuals who worked for Defendant ("TSA EMPLOYEE CLASS"): All individuals who worked as BDOs, TSOs, Lead TSOs, and any other similarly situated position for Defendant, at any time from January 2020 until the final judgment (hereinafter "the Class Period"),where their primary function is to screen and physically handle passengers and/or their belongings, and who have been required to perform their official duties in close proximity to objects, surfaces and/or individuals infected with COVID-19 without sufficient precautionary measures taken and have not been compensated with hazardous duty pay differential as set forth in Appendix A of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous microorganisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

## FACTUAL ALLEGATIONS

9.     5 U.S.C. § 5545(d) provides that the United States Office of Personnel Management ("OPM") shall establish a schedule of pay differentials for duty involving unusual physical hardship or hazard.  Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907, which establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty pay differential for each day that the employee is exposed to hazardous duty.

10.     The schedule of hazardous duty pay differentials set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty five percent (25%) hazard pay differential when employees perform work with or in close proximity to "virulent biologicals," which are defined as "materials of micro-organic nature which when introduced

into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. § Pt. 550, Subpt. I, App. A.

11.     Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

12.     The schedule of environmental differentials set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations, provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserims and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" and a four percent (4%) environmental differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury" and 5 C.F.R. § Pt. 532, Subpt. E, App. A.

13.     Since January 2020 through the present, Ms. Higgins and members of the Class have performed work with or in close proximity to objects, surfaces, and/or individuals infected with the novel coronavirus ("COVID-19").

14.     COVID-19 is a virus which when introduced into the body is likely to cause serious disease or fatality.  The Center for Disease Control and Prevention ("CDC") has determined that COVID-19 meets the definition for "severe acute respiratory syndromes" as set forth in Executive

Order 13295, as amended by Executive Orders 13375 and 13674, and, therefore, is a "quarantinable communicable disease." *See* Attachment to OPM Memorandum No. 2020-05, Coronavirus Disease 2019 (COVID-19): Additional Guidance (March 7, 2020).  COVID-19 can cause symptoms ranging from mild illness "to severe illness and death." *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Symptoms of Coronavirus, available at: https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited May 15, 2020).  More than 300,000 people worldwide, including more than 87,000 people in the United States, have died from COVID-19. *See* CNN Health, Tracking coronavirus' global spread (May 15, 2020) available at: https://www.cnn.com/interactive/2020/health/coronavirus-maps-and-cases/ (last visited May 15, 2020).

15.     COVID-19 is "spreading easily from person-to-person" and has been characterized as a pandemic by the World Health Organization ("WHO"). *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Situation Summary, available at: https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html#severity (last visited May 15, 2020).

16.     The virus can be spread by touching infected objects or surfaces and by breathing in areas where an infected person has coughed or exhaled.  As the World Health Organization explained, "The disease spreads primarily from person to person through small droplets from the nose or mouth, which are expelled when a person with COVID-19 coughs, sneezes, or speaks… People can catch COVID-19 if they breathe in these droplets from a person infected with the virus.  This is why it is important to stay at least 1 meter away from others.  These droplets can land on objects and surfaces around the person such as tables, doorknobs and handrails.  People can become infected by touching these objects or surfaces, then touching their eyes, nose or mouth." World Health Organization, Q&A

on coronaviruses (COVID-19) (May 15, 2020), available at: https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited May 15, 2020).

17.     According to the World Health Organization, "Studies have shown that the COVID-19 virus can survive for up to 72 hours on plastic and stainless steel, less than 4 hours on copper and less than 24 hours on cardboard." World Health Organization, Q&A on coronaviruses (COVID-19) (May 15, 2020), available at: https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited May 15, 2020). Accordingly, contact with an infected object or surface may present a risk of transmission for "up to several days" from the time the object or surface became infected.

18.     A person who is infected with COVID-19 may not present symptoms immediately. The time between exposure to COVID-19 and the moment when symptoms start is commonly around five to six days but can range from 1 – 14 days. World Health Organization, Q&A on coronaviruses (COVID-19) (May 15, 2020), available at: https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited May 15, 2020).

19.     An infected individual may spread COVID-19 before he or she begins to present significant symptoms, or even any symptoms at all.  As the World Health Organization explained, "Many people with COVID-19 experience only mild symptoms. This is particularly true at the early stages of the disease.  It is possible to catch COVID-19 from someone who has just a mild cough and does not feel ill." World Health Organization, Q&A on coronaviruses (COVID-19) (May 15, 2020), available at: https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited May 15, 2020).

20.     From January 2020 through the present, Ms. Higgins and others similarly situated have

performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

21.     Since January 2020 until now, Ms. Higgins has been required to screen and physically handle passengers and/or their belongings for Defendant. Ms. Higgins was not provided with any personal protective equipment on any of these occasions.

22.     As of November 17, 2020, a total of 2,885 TSA employees have tested positive for the coronavirus, which causes COVID-19, and nine have died. *See, e.g.*, https://www.usatoday.com/story/travel/news/2020/11/17/denver-international-airport-tsa-screener-dies-covid-19/6324248002/ (Nov. 17, 2020).

23.     Exposure to objects, surfaces, and/or individuals infected with COVID-19 was not taken into account in the classification of plaintiffs' positions.  After all, and on information and belief, COVID-19 was not discovered in the U.S. until approximately late January 2020, and therefore could not have been a known or considered risk factor in plaintiffs' positions.

24.     As a result of plaintiffs' performance of their official duties in close proximity to objects, surfaces, and/or individuals infected with COVID-19, the plaintiffs have been exposed to "virulent biologicals" within the meaning of subpart I of Part 550 of Title 5, Code of Federal Regulations and hazardous micro-organisms within the meaning of subpart E of Part 532 of Title 5, Code of Federal Regulations.

25.     Defendant has not compensated plaintiffs with hazardous duty pay differential for exposure to virulent biologicals as set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous microorganisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

26.     Accordingly, since January 2020, and continuing to date, the defendant has failed to

provide hazardous duty and environmental differential pay to the plaintiffs when they work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 as required by 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4).

27.     Even if the TSA had provided sufficient precautionary measures to ensure complete protection from COVID-19—and it did not—there are no safety precautions that would result in reducing exposure to COVID-19 to a less than significant level of risk. *See* 5 CFR § 550.906.  COVID-19 spreads easily from person to person and can even last on surfaces like countertops and doorknobs anywhere from several hours to days.  Because there is currently no vaccine for COVID-19, Plaintiffs have been, and are, exposed to COVID-19 every time their job forces them into the community.

## **CLASS ACTION ALLEGATIONS**

28.     Ms. Higgins incorporates all preceding paragraphs as if fully stated herein.

29.     Ms. Higgins is a member of the TSA EMPLOYEE CLASS she seeks to represent.

30.     The proposed members of the TSA EMPLOYEE CLASS identified herein are so numerous that joinder of all members is impracticable. Only the Defendant's own records will reveal the actual number of BDOs, TSOs, Lead TSOs, and any other similarly situated position who have performed and continue to perform work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices and were not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous micro-organisms set forth in in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations. However, Plaintiffs are informed and believe that the proposed class may include over one thousand federal employees.

31.     Questions of law and fact are common to the TSA EMPLOYEE CLASS, and these

questions predominate over any questions that may affect only individual class members. Questions of law and fact that are common to all members of the TSA EMPLOYEE CLASS include: (1) whether the class member performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19; (2) whether the class member performed such work without sufficient protective devices; (3) whether exposure to COVID-19 has been taken into account in the classification of his or her position; and (4) whether the class member was paid the hazardous duty pay differential for exposure to virulent biologicals or the environmental differential for exposure to hazardous micro-organisms for each day that they performed such work.

32.     The claims of Ms. Higgins are typical of the claims of the TSA EMPLOYEE CLASS. Specifically, like all members of the class, Ms. Higgins performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices, Ms. Higgins was not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous micro-organisms set forth in in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations, and her claims rest on proof and legal theories common to all proposed class members.

33.     Ms. Higgins as Representative Plaintiff, will fairly and adequately represent and protect the interests of the members of the TSA EMPLOYEE CLASS because: (1) she is willing and able to represent the proposed class and have every incentive to pursue this action to a successful conclusion; (2) her interests are not antagonistic to those of the other class members; and (3) she is represented by counsel experienced in litigating class actions, including those involving federal employees.

34.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because the Defendant has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Specifically, the Defendant has and continues to require members of the TSA EMPLOYEE CLASS to perform work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices and the Defendant has failed, and continues to fail to pay members of the Hazardous Duty Class the twenty five percent (25%) hazardous duty pay differential set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous micro-organisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations for each day.

35.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the TSA EMPLOYEE CLASS, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The class members have been damaged and are entitled to recovery as a result of the Defendant's common practice of failing to compensate Plaintiffs correctly as a result of their performance of work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.  Requiring each class member to pursue his or her claim individually would result in needless duplication of proof and would waste the resources of both the parties and the courts. Finally, monetary relief would be easily calculable for the financial injuries suffered by members of the TSA EMPLOYEE CLASS, consisting of a twenty five percent (25%) hazard pay differential for each day they performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 covered by 5 U.S.C. § 5545(d), and an eight or four percent environmental differential for employees covered by 5 U.S.C. § 5343(c)(4).

36.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the Code of Federal Regulations and hazardous duty pay provisions. The interest of Class members in individually controlling the prosecution of separate claims is small because the damages in an individual action—a 25% pay increase during the period of exposure to COVID-19—is small. The Class members can be readily located and notified of this class action through Defendants' records.

37.     Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

**COUNT ONE**

**(Hazard Pay)**

**By PLAINTIFF in her individual capacity and in her capacity as**

**representative of all similarly situated members of the TSA EMPLOYEE CLASS**

**against DEFENDANT**

38.     Ms. Higgins incorporates by reference herein the allegations contained in paragraphs 1 through 33 above.

39.     5 U.S.C. § 5545(d) provides that the United States Office of Personnel Management ("OPM") shall establish a schedule of pay differentials for duty involving unusual physical hardship or hazard.

40.     Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907 regarding hazardous duty pay differentials.  These regulations establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty pay differential for each day that the employee is exposed to the hazard.

41.     The schedule of hazardous duty pay differentials is contained in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations. *See* 5 C.F.R. § 550.903.

42.     Pursuant to 5 C.F.R. § 550.904, federal agencies "shall pay the hazard pay differential listed in appendix A of this subpart to an employee who is assigned to and performs any duty specified in appendix A of this subpart" unless "the hazardous duty or physical hardship has been taken into account in the classification of his or her position[.]"

43.     When an employee performs any duty for which a hazard pay differential is authorized, the agency must pay the hazard pay differential for all hours that the employee worked on the day on which he or she performed the hazardous duty. 5 C.F.R. § 550.905.

44.     The schedule of hazardous duty pay differentials set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty five percent (25%) hazard pay differential when employees perform work with or in close proximity to

"virulent biologicals," which are defined as "materials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. § Pt. 550, Subpt. I, App. A.

45.     From January 2020 through the present, Ms. Higgins, members of the TSA EMPLOYEE CLASS, and others similarly situated have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

46.     Exposure to COVID-19 was not taken into account in the classification of Ms. Higgins and members of the TSA EMPLOYEE CLASS's positions.

47.     Defendant has failed, and continues to fail to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the twenty five percent (25%) hazardous duty pay differential for each day that the plaintiffs have been exposed to COVID-19 through the performance of their official duties without sufficient protective devices.

48.     By failing to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS a twenty five percent (25%) pay differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, the Defendant has violated, and is continuing to violate, the provisions of Title 5 relating to hazardous duty pay at 5 U.S.C. § 5545(d).

49.     As a consequence of Defendant's failure to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS hazardous duty pay, Ms. Higgins and members of the TSA EMPLOYEE CLASS have been unlawfully deprived of hazardous duty pay and other relief.

50.     As a result of the Defendant's willful and purposeful violations of Title 5, there has become due and owing to Ms. Higgins and each of the members of the TSA EMPLOYEE CLASS various amounts which have not yet been precisely determined.  The employment and work records for Ms. Higgins and members of the TSA EMPLOYEE CLASS are in the possession, custody and

control of the Defendant and Ms. Higgins is unable to state at this time the exact amounts owing to each of them.  Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. § 211(c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Ms. Higgins, members of the TSA EMPLOYEE CLASS, and other employees similarly situated from which the amounts of Defendant's liability can be ascertained.

## COUNT TWO

### (Environmental Differential Pay)

### By PLAINTIFF in her individual capacity and in her capacity as

### representative of all similarly situated members of the TSA EMPLOYEE CLASS

### against DEFENDANT

51.      Ms. Higgins incorporates by reference herein the allegations contained in paragraphs 1 through 46 above.

52.      Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations regarding wage schedules and rates for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

53.      The schedule of environmental differentials is contained in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations. *See* 5 C.F.R. § 532.511(d).

54.      The schedule of environmental differentials provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" in situations

where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserims and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" or a four percent (4%) environmental differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury." 5 C.F.R. § Pt. 532, Subpt. E, App. A.

55.     The regulations provide that "An employee entitled to an environmental differential shall be paid an amount equal to the percentage rate authorized by the Office of Personnel Management for the category in which the working condition or hazard falls, multiplied by the rate for the second step of WG–10 for the appropriated fund employees and NA–10 for the nonappropriated fund employees on the current regular non-supervisory wage schedule for the wage area for which the differential is payable, counting one-half cent and over as a whole cent." 5 C.F.R. § 532.511(b)(1).

56.     An employee entitled to an environmental differential on the basis of hours in a pay status "shall be paid for all hours in a pay status on the day on which he/she is exposed to the situation." 5 C.F.R. § 532.511(b)(3).

57.     From January 2020 through the present and continuing to the present, Ms. Higgins, members of the TSA EMPLOYEE CLASS, and other similarly situated prevailing rate employees have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19.

58.     Exposure to objects, surfaces, and/or individuals infected with COVID-19 poses a risk of personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work

due to acute, prolonged, or chronic disease.  The Centers for Disease Control and Prevention ("CDC") has determined that COVID-19 meets the definition for "severe acute respiratory syndromes" as set forth in Executive Order 13295, as amended by Executive Order 13375 and 13674, and, therefore, is a "quarantinable communicable disease." *See* Attachment to OPM Memorandum No. 2020-05, Coronavirus Disease 2019 (COVID-19): Additional Guidance (May 15, 2020).  COVID-19 can cause symptoms ranging from mild illness "to severe illness and death." *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19),

59.    Symptoms of Coronavirus, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited May 18, 2020).  More than 318,000 people worldwide, including more than 90,000 in the United States, have died from COVID-19. *See* CNN Health, Tracking coronavirus' global spread (May 18, 2020) available at: https://www.cnn.com/interactive/2020/health/coronavirus-maps-and-cases/ (last visited May 15, 2020).

60.    Ms. Higgins, members of the TSA EMPLOYEE CLASS, and other similarly situated prevailing rate employees have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

61.    Defendant has failed, and continues to fail to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the eight or four percent environmental differential listed in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations for each period when they have been exposed to COVID-19 through the performance of their official duties.

62.    By failing to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the eight or four percent environmental differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, the Defendant has violated, and is continuing to violate the

provisions of 5 U.S.C. § 5343(c)(4).

63.     As a consequence of Defendant's failure to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS environmental differential pay, Ms. Higgins and members of the TSA EMPLOYEE CLASS have been unlawfully deprived of environmental differential pay and other relief.

64.     As a result of the Defendant's willful and purposeful violations of Title 5, there has become due and owing to Ms. Higgins and each of the member of the TSA EMPLOYEE CLASS various amounts which have not yet been precisely determined. The employment and work records for Ms. Higgins and each member of the TSA EMPLOYEE CLASS are in the possession, custody and control of the Defendant and the Plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. § 211(c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amounts of Defendant's liability can be ascertained.

## PRAYERS FOR RELIEF

WHEREFORE, Ms. Higgins and the TSA EMPLOYEE CLASS pray for judgment as follows:

1.     Enter judgment declaring that the Defendant violated 5 U.S.C. § 5545(d) by failing and refusing to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the twenty five percent (25%) hazardous duty pay differential for exposure to "virulent biologicals" listed in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, for each day that they have been required to work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without protective devices that afford complete protection.

-17-

2.      Enter judgment declaring that the Defendant violated 5 U.S.C. § 5343(c) by failing and refusing to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the prevailing rate employees the eight or four percent environmental pay differential for exposure to hazardous micro-organisms listed in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations for each period that they have been required to work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 where the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserims and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury.

3.      Certify a class consisting of all individuals who worked individuals who worked as Behavior Detection Officers, Transportation Security Officers, Lead Transportation Security Officers, and any other similarly situated position where their primary function is to screen and physically handle passengers and/or their belongings, who from January 2020 through the present and continuing and ongoing performed work with or in close proximity to objects, surfaces, and/or individuals infected with the novel coronavirus ("COVID-19") without sufficient protective devices, and were not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential for exposure to hazardous micro-organisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

4.      Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled;

5.      Award Ms. Higgins and members of the TSA EMPLOYEE CLASS monetary damages in the form of back pay compensation plus interest;

6.      Award Ms. Higgins and all other TSA EMPLOYEE CLASS members their reasonable attorneys' fees to be paid by Defendant, and the costs of this action; and

7.      Grant such other legal and equitable relief as may be just and proper.

Respectfully submitted,

**/s/ Michael Morrison**
Michael Morrison (Counsel of Record)
ALEXANDER MORRISON + FEHR
1900 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 394-0888
(310) 394-0811 facsimile
mmorrison@akgllp.com

Kevin J. Cole
PARKER COLE, P.C.
6700 Fallbrook Avenue, Suite 207
West Hills, CA 91307
(818) 292-8800
(818) 292-8337 facsimile
kevin@parkercolelaw.com

*Attorneys for Plaintiffs*

Dated: November 27, 2020