## THE UNITED STATES COURT OF FEDERAL CLAIMS

MARION HIGGINS,

On behalf of herself and all others
similarly situated,

               Plaintiff,

    v.

THE UNITED STATES OF AMERICA,

               Defendant.

Case No. 20-1700 C
(Judge Somers)

**FIRST AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
FOR DAMAGES**

    **1. HAZARD PAY**

    **2. ENVIRONMENTAL
       DIFFERENTIAL PAY**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.      Each and every day, thousands of Americans pass through airports. Most, if not all of them, will experience a similar interaction: they will go through a checkpoint and screening process facilitated by the Department of Homeland Security's Transportation Security Administration ("TSA"), and come into close contact with TSA employees, including security personnel and passenger screeners. Those TSA employees are there for one reason—to keep passengers and the overall airline industry safe. To do so, those employees must come into close contact with the passengers passing through TSA checkpoints, as part of their screening and security functions.

2.      Unfortunately, and in light of the COVID-19 pandemic, being forced into close contact with travelers presents a severe health risk to TSA employees. According to TSA, as of February 12, 2021, a total of 6,687 of its employees have tested positive for COVID-19, and fifteen

-1-

employees and one screening contractor have died from it.  *See Coronavirus (COVID-19) Information*, TRANSPORTATION SECURITY ADMINISTRATION, https://www.tsa.gov/coronavirus#:~:text=Since%20the%20beginning%20of%20the,died%20after%20contracting%20the%20virus. (last updated Feb. 16, 2021).

3.      As federal workers—and especially workers whose primary duty is to screen and come into close physical contact with travelers—TSA employees are entitled to hazard and environmental discharge pay under 5 U.S.C. § 5345 and 5 U.S.C. § 5343[1] due to exposure to virulent biologicals—in this case, COVID-19.  TSA employees are forced to work every day without appropriate protective equipment being provided and other safeguards being taken to reduce their exposure to COVID-19.  And as evident from the number of deaths so far, the risk is not hypothetical.  It is very real.

4.      The Office of Personnel Management ("OPM") explains it clearly: unlike "employee[s] who may come in contact with the virus or another similar virus through incidental exposure to the public or other employees who are ill," employees who are "exposed to the virus during the performance of assigned duties (e.g., as in the case of a poultry handler or health care worker)" may receive a hazard pay differential for exposure to "virulent biologicals" and an environmental differential.  *See* Attachment to OPM Memorandum No. 2020-05, Coronavirus Disease 2019 (COVID-19): Additional Guidance (Mar. 7, 2020).  Like poultry handlers and health care workers, TSA employees are exposed to COVID-19 during the performance of their assigned

---

[1] The Aviation and Transportation Security Act of 2001 ("ATSA") does not preclude Plaintiff from bringing claims for hazard and environmental discharge pay.  Under the ATSA, TSA may "fix the compensation, terms, and conditions of employment."  49 U.S.C. § 44935 (note).  The hazard and environmental discharge pay statutes merely supplement by a percentage the compensation fixed by TSA for employees exposed to virulent biologicals during the performance of their assigned duties.  In other words, those statutes do not conflict with the ATSA because they do not apply to TSA's power to fix the compensation of employment.

duties of screening and physically handling passengers and/or their belongings.

5.      This class action complaint is brought on behalf of all TSA employees who were not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential for exposure to hazardous micro-organisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

## JURISDICTION AND VENUE

6.      The United States Court of Federal Claims has jurisdiction and venue over this action pursuant to 28 U.S.C. § 1491, 5 U.S.C. § 5545(d), 5 U.S.C. § 5343(c)(4), 28 U.S.C. § 2501, 5 U.S.C. § 701 et seq., 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. § 5596.

## THE PARTIES

7.      Ms. Higgins is an employee of Defendant within the meaning of 29 U.S.C. § 203(e), and within the meaning of Title 5 of the U.S. Code, specifically, 5 U.S.C. §§ 2105, 5541.

8.      Ms. Higgins is employed by Defendant as a Behavior Detection Officer ("BDO"), Transportation Security Officer ("TSO"), and Lead Transportation Security Officer ("Lead TSO"). Ms. Higgins has served in one or more of these roles since March 21, 2004. Ms. Higgins works at the Los Angeles International Airport and makes $26/hour.

## CLASS DEFINITIONS

9.      Ms. Higgins bring hazardous duty pay claims on behalf of the following category of similarly situated individuals who worked for Defendant ("TSA EMPLOYEE CLASS"): All individuals who worked as BDOs, TSOs, Lead TSOs, and any other similarly situated position for Defendant, at any time from January 2020 until the final judgment, where their primary function is to screen and physically handle passengers and/or their belongings, and who have been required

-3-

to perform their official duties in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient precautionary measures taken and have not been compensated with hazardous duty pay differential as set forth in Appendix A of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous microorganisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

## FACTUAL ALLEGATIONS

### A.  *Hazard Pay*

10.    A general schedule salaried federal employee is eligible to receive hazardous duty pay differentials "for duty involving unusual physical hardship or hazard[.]"  *See* 5 U.S.C. § 5545(d).  However, a general schedule employee is not entitled to hazardous duty pay (subject to certain exceptions that are not relevant here) when their job classification already "takes into account the degree of physical hardship or hazard involved in the performance of the duties" of that position.  *Id.*, § 5545(d)(1).  OPM is empowered to prescribe regulations consistent with the statute.  *Id.*, §§ 5545(d) & 5548.

11.    Under this authority, OPM defined "duty involving physical hardship" to mean "duty that may not in itself be hazardous, but causes extreme physical discomfort or distress and is not adequately alleviated by protective or mechanical devices[.]"   5 C.F.R. § 550.902.  Hazardous duty also means "duty performed under circumstances in which an accident could result in serious injury or death[.]"  *Id.*, § 550.902.

12.    OPM also established a table to administer hazardous duty pay differentials.  *See id.*, § 550.904(a).  This table, located in Appendix A to Subpart I of 5 C.F.R. Part 550, lists "[e]xposure to Hazardous Agents, [including] work with or in close proximity to . . . [v]irulent biologicals" as a compensable hazardous duty.

13.     Appendix A describes virulent biologicals as "[m]aterials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. § Pt. 550, Subpt. I, App. A.

14.     The schedule of hazardous duty pay differentials set forth in Appendix A provides that federal agencies shall pay a twenty-five percent (25%) hazard pay differential when employees perform work with or in close proximity to "virulent biologicals." *Id.*

### B. Environmental Differential Pay

15.     A waged federal employee is eligible to receive environmental differential pay "for duty involving unusually severe working conditions or unusually severe hazards[.]" *See* 5 U.S.C. § 5343(c)(4).

16.     Under its statutory authority, OPM is empowered to establish regulations to administer environmental differential pay. *Id.*, § 5346. OPM has created a schedule for qualifying duties, which are included in Appendix A to Subpart E of 5 C.F.R. Part 532. *See* 5 C.F.R. § 532.511.

17.     Appendix A "lists the environmental differentials authorized for exposure to various degrees of hazards, physical hardships, and working conditions of an unusual nature."

18.     According to Appendix A, there are pay differentials for two categories of exposure to micro-organisms:

> 6. Micro-organisms—high degree hazard: Working with or in close proximity to micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease. These are work situations wherein the use of safety devices and equipment, medical prophylactic procedures such as

vaccines and antiserims [sic] and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury[.]

. . .

7. Micro-organisms—low degree hazard.

a. Working with or in close proximity to micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man, such as culture flasks, culture test tubes, hypodermic syringes and similar instruments, and biopsy and autopsy material [; or]

b. Working with or in close proximity to micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man, such as culture flasks, culture test tubes, hypodermic syringes and similar instruments, and biopsy and autopsy material and wherein the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury[.]

19.    For exposure to "[m]icro-organisms—high degree hazard," the schedule of environmental pay differentials set forth in Appendix A (Subpart E of 5 C.F.R. Part 532) provides that federal agencies shall pay an eight percent (8%) pay differential.

20.    On the other hand, for exposure to "[m]icro-organisms—low degree hazard," the schedule of environmental pay differentials set forth in Appendix A (Subpart E of 5 C.F.R. Part 532) provides that federal agencies shall pay a four percent (4%) pay differential.

### C.  Ms. Higgins's and the Class Members' Exposure to COVID-19

21.     Since January 2020 (when, on information and belief, the COVID-19 pandemic first hit the U.S.) through the present, Ms. Higgins and members of the TSA EMPLOYEE CLASS have been assigned and performed work with, or in close proximity to, objects, surfaces, and/or individuals infected with COVID-19.

22.     Because of the highly infectious nature of COVID-19—including a recently discovered, even more contagious COVID-19 variant called B.1.1.7—Ms. Higgins and members of the TSA EMPLOYEE CLASS have been directly exposed to COVID-19 as a result of performing their regular job duties.  As explained below, Ms. Higgins's and the Class Members' job duties require them to come into close physical contact with the general public.  Given the increasing numbers of COVID-19 cases, coupled with the degree to which COVID-19 spreads, anytime Ms. Higgins and members of the TSA EMPLOYEE CLASS are forced into the community, they are exposed to COVID-19.

23.     Since January 2020 until now, Ms. Higgins has been required to screen and physically handle passengers and/or their belongings for Defendant.  Ms. Higgins was not provided with any personal protective equipment on any of these occasions.

24.     Critically, the risk of exposure to COVID-19 is not hypothetical.  It is very real.  For example, since the start of the pandemic, many members of the TSA EMPLOYEE CLASS have already (and unfortunately) tested positive for COVID-19.  As of February 16, 2021, a total of 6,687 TSA employees have tested positive for COVID-19, and fifteen employees and one screening contractor have died from it.  *See Coronavirus (COVID-19) Information*, TRANSPORTATION                 SECURITY                 ADMINISTRATION, https://www.tsa.gov/coronavirus#:~:text=Since%20the%20beginning%20of%20the,died%20afte

r%20contracting%20the%20virus. (last updated Feb. 16, 2021).

25.     The job classification of Ms. Higgins and members of the TSA EMPLOYEE CLASS does not take into account exposure to objects, surfaces, and/or individuals infected with COVID-19.  Indeed, the job descriptions applicable to the class positions do not indicate that exposure to harmful micro-organisms and infectious diseases is an expected job duty.  Moreover, Ms. Higgins and members of the TSA EMPLOYEE CLASS have never been told that their job classification and pay accounts for possible exposure to harmful micro-organisms and infectious diseases.  Indeed, Ms. Higgins and the members of the TSA EMPLOYEE CLASS had not been required to work in close proximity to objects, surfaces, and individuals infected with harmful micro-organisms or infectious diseases prior to the COVID-19 pandemic.

26.     In addition, COVID-19 is a micro-organism for which safety devices, equipment, and other measures have not practically eliminated the potential for personal injury.  *See*, *e.g.*, 5 C.F.R. § 532.511(d); 5 C.F.R. Pt. 532, Subpt. E, App. A.  In other words, even if TSA had provided sufficient precautionary measures to ensure complete protection from COVID-19—and it did not—there are no safety precautions that would result in reducing exposure to COVID-19 to a less than significant level of risk.  *See* 5 CFR § 550.906.  After all, COVID-19 spreads easily from person to person and can even last on surfaces like countertops and doorknobs anywhere from several hours to days.  Because there is currently no widely available vaccine for COVID-19, Ms. Higgins and members of the TSA EMPLOYEE CLASS have been, and are, exposed to COVID-19 every time their job forces them into the community.

27.     Ms. Higgins's and the Class Members' exposure to COVID-19 presents a "high degree hazard" because COVID-19 leads to potential personal injury such as death, or temporary, partial, or a complete loss of facilities or an inability to work due to acute, prolonged, or chronic

disease. *See*, *e.g.*, 5 C.F.R. § 532.511(d); 5 C.F.R. Pt. 532, Subpt. E, App. A.

28.     As a result of Ms. Higgins's and the Class Members' performance of their official duties in close proximity to objects, surfaces, and/or individuals infected with COVID-19, they have been exposed to "virulent biologicals" within the meaning of subpart I of Part 550 of Title 5, Code of Federal Regulations, and exposed to hazardous micro-organisms within the meaning of subpart E of Part 532 of Title 5, Code of Federal Regulations.

29.     Defendant has not compensated Ms. Higgins and members of the TSA EMPLOYEE CLASS with hazardous duty pay differential for exposure to virulent biologicals as set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous microorganisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

30.     Accordingly, since January 2020, and continuing to date, Defendant has failed to provide hazardous duty and environmental differential pay to Ms. Higgins and members of the TSA EMPLOYEE CLASS when they work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 as required by 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4).

### D.  COVID-19

31.     COVID-19 is a virus which, when introduced into the body, is likely to cause serious disease or fatality.   The Centers for Disease Control and Prevention ("CDC") has determined that COVID-19 meets the definition for "severe acute respiratory syndromes" as set forth in Executive Order 13295, as amended by Executive Orders 13375 and 13674 and therefore is a "quarantinable communicable disease." *See* Attachment to OPM Memorandum No. 2020-05, Coronavirus Disease 2019 (COVID-19): Additional Guidance (Mar. 7, 2020).  COVID-19 can cause symptoms ranging from mild illness to "severe illness and even death." *See Coronavirus*

*(COVID-19) Frequently Asked Questions: What Is COVID-19?*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Basics (last updated Feb. 8, 2021).  According to the CDC, in the United States alone, there have been 27,542,421 cases of COVID-19 and 485,070 COVID-19-related deaths since January 21, 2020.  *See CDC COVID Data Tracker*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last updated Feb. 16, 2021).

32.     COVID-19 "spreads very easily from person to person" and is considered to be a pandemic.  *See How COVID-19 Spreads*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html    (last updated Oct. 28, 2020).

33.     The virus can be spread by touching infected objects or surfaces and by breathing in areas where an infected person has coughed or exhaled.  As the World Health Organization explained, "COVID-19 . . . spreads between people, mainly when an infected person is in close contact with another person.  The virus can spread from an infected person's mouth or nose in small liquid particles when they cough, sneeze, speak, sing or breathe heavily . . . .  Other people can catch COVID-19 when the virus gets into their mouth, nose or eyes, which is more likely to happen when people are in direct or close contact (less than 1 metre apart) with an infected person . . . .  The virus can also spread after infected people sneeze, cough on, or touch surfaces, or objects, such as tables, doorknobs and handrails.  Other people may become infected by touching these contaminated surfaces, then touching their eyes, noses or mouths without having cleaned their hands first."  *See Coronavirus Disease (COVID-19): How Is It Transmitted?*, WORLD HEALTH ORGANIZATION,    https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted (last updated Oct.

20, 2020).

34.     Research has shown that the virus causing COVID-19 can live for up to three days on plastic and stainless steel, twenty-four hours on cardboard, four hours on copper, and three hours in aerosols.  *See Study Suggests New Coronavirus May Remain on Surfaces for Days*, NATIONAL INSTITUTES OF HEALTH (Mar. 24, 2020), https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days.     Accordingly, contact with an infected object or surface may present a risk of transmission for days after the object or surface became infected.

35.     A person who is infected with COVID-19 may not present symptoms immediately. The time between exposure to COVID-19 and the moment when symptoms start is commonly around five to six days but can range from one to fourteen days.  *See Coronavirus*, WORLD HEALTH ORGANIZATION, https://www.who.int/health-topics/coronavirus#tab=tab_3 (last visited Feb. 16, 2021).

36.     An infected individual may spread COVID-19 before he or she begins to present significant symptoms, or even any symptoms at all.  As the World Health Organization explained, "Whether or not they have symptoms, infected people can be contagious and the virus can spread from them to other people.  Laboratory data suggests that infected people appear to be most infectious just before they develop symptoms (namely 2 days before they develop symptoms) and early in their illness.  People who develop severe disease can be infectious for longer."  *See Coronavirus Disease (COVID-19): How Is It Transmitted?*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted (last updated Oct. 20, 2020).

///

## CLASS ACTION ALLEGATIONS

37.     Ms. Higgins incorporates all preceding paragraphs as if fully stated herein.

38.     Ms. Higgins is a member of the TSA EMPLOYEE CLASS she seeks to represent.

39.     The proposed members of the TSA EMPLOYEE CLASS identified herein are so numerous that joinder of all members is impracticable. Only Defendant's own records will reveal the actual number of BDOs, TSOs, Lead TSOs, and any other similarly situated position who have performed and continue to perform work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices and were not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous micro-organisms set forth in in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations. However, Plaintiffs are informed and believe that the proposed class may include over one thousand federal employees.

40.     Questions of law and fact are common to the TSA EMPLOYEE CLASS, and these questions predominate over any questions that may affect only individual class members.

41.     Questions of law and fact that are common to all members of the TSA EMPLOYEE CLASS include: (1) whether the class member performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19; (2) whether the class member performed such work without sufficient protective devices; (3) whether exposure to COVID-19 has been taken into account in the classification of his or her position; and (4) whether the class member was paid the hazardous duty pay differential for exposure to virulent biologicals or the environmental differential for exposure to hazardous micro-organisms for each day that they performed such work.

42.     The claims of Ms. Higgins are typical of the claims of the TSA EMPLOYEE CLASS. Specifically, like all members of the class, Ms. Higgins performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices, Ms. Higgins was not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous micro-organisms set forth in in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations, and her claims rest on proof and legal theories common to all proposed class members.

43.     Ms. Higgins as Representative Plaintiff, will fairly and adequately represent and protect the interests of the members of the TSA EMPLOYEE CLASS because: (1) she is willing and able to represent the proposed class and have every incentive to pursue this action to a successful conclusion; (2) her interests are not antagonistic to those of the other class members; and (3) she is represented by counsel experienced in litigating class actions, including those involving federal employees.

44.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because the Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

45.     Specifically, Defendant has required and continues to require members of the TSA EMPLOYEE CLASS to perform work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices—and therefore causes members of the TSA EMPLOYEE CLASS to be exposed to COVID-19—and Defendant has failed, and continues to fail to pay Class Members the twenty-five percent (25%) hazardous duty pay differential set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal

Regulations or the environmental differential for exposure to hazardous micro-organisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations for each day.

46.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the TSA EMPLOYEE CLASS, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members have been damaged and are entitled to recovery as a result of Defendant's common practice of failing to compensate Plaintiffs correctly as a result of their performance of work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.  Requiring each Class Member to pursue his or her claim individually would result in needless duplication of proof and would waste the resources of both the parties and the courts.

47.     Finally, monetary relief would be easily calculable for the financial injuries suffered by members of the TSA EMPLOYEE CLASS, consisting of a twenty-five percent (25%) hazard pay differential for each day they performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 covered by 5 U.S.C. § 5545(d), and an eight or four percent environmental differential for employees covered by 5 U.S.C. § 5343(c)(4).

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable.  Even if every Class Member could afford to pursue individual litigation, the court system could not.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented

herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each Class Member.  Ms. Higgins anticipates no difficulty in the management of this action as a class action.  Class wide relief is essential to compel compliance with the Code of Federal Regulations and hazardous duty pay provisions.  The interest of the Class Members in individually controlling the prosecution of separate claims is small because the damages in an individual action—a twenty-five percent (25%) pay increase during the period of exposure to COVID-19—is small.  The Class Members can be readily located and notified of this class action through Defendant's records.

49.     Additionally, the prosecution of separate actions by individual Class Members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests.  The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

<u>**COUNT ONE**</u>

**(Hazard Pay)**

**(By PLAINTIFF in her individual capacity and in her capacity as representative of all similarly situated members of the TSA EMPLOYEE CLASS against DEFENDANT)**

50.     Ms. Higgins incorporates by reference herein the allegations contained in paragraphs 1 through 49 above.

51.     5 U.S.C. § 5545(d) provides that OPM shall establish a schedule of pay differentials for duty involving unusual physical hardship or hazard.

52.     Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§ 550.901-

550.907 regarding hazardous duty pay differentials.  These regulations establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty pay differential for each day that the employee is exposed to the hazard.

53.     The schedule of hazardous duty pay differentials is contained in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations.  *See* 5 C.F.R. § 550.903.

54.     Pursuant to 5 C.F.R. § 550.904, federal agencies "shall pay the hazard pay differential listed in appendix A of this subpart to an employee who is assigned to and performs any duty specified in appendix A of this subpart" unless "the hazardous duty or physical hardship has been taken into account in the classification of his or her position[.]"

55.     When an employee performs any duty for which a hazard pay differential is authorized, the agency must pay the hazard pay differential for all hours that the employee worked on the day on which he or she performed the hazardous duty.  5 C.F.R. § 550.905.

56.     The schedule of hazardous duty pay differentials set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty-five percent (25%) hazard pay differential when employees perform work with or in close proximity to "virulent biologicals," which are defined as "materials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection."  5 C.F.R. § Pt. 550, Subpt. I, App. A.

57.     From January 2020 through the present, Ms. Higgins, members of the TSA EMPLOYEE CLASS, and others similarly situated have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

58.     COVID-19 is a virulent biological likely to cause serious disease or fatality if introduced into the human body and for which protective devices do not afford complete protection.

59.     Exposure to COVID-19 was not taken into account in the classification of Ms. Higgins's and the TSA EMPLOYEE CLASS members' positions.

60.     Defendant has failed, and continues to fail to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the twenty-five percent (25%) hazardous duty pay differential for each day that Ms. Higgins and the Class Members have been exposed to COVID-19 through the performance of their official duties without sufficient protective devices.

61.     By failing to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS a twenty-five percent (25%) pay differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, Defendant has violated, and is continuing to violate, the provisions of Title 5 relating to hazardous duty pay at 5 U.S.C. § 5545(d).

62.     As a consequence of Defendant's failure to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS hazardous duty pay, Ms. Higgins and members of the TSA EMPLOYEE CLASS have been unlawfully deprived of hazardous duty pay and other relief.

63.     As a result of Defendant's willful and purposeful violations of Title 5, there has become due and owing to Ms. Higgins and each of the members of the TSA EMPLOYEE CLASS various amounts which have not yet been precisely determined.  The employment and work records for Ms. Higgins and members of the TSA EMPLOYEE CLASS are in the possession, custody and control of Defendant, and Ms. Higgins is unable to state at this time the exact amounts owing to each of them.  Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. § 211(c)), and various statutory and regulatory provisions

to maintain and preserve payroll and other employment records with respect to Ms. Higgins, members of the TSA EMPLOYEE CLASS, and other employees similarly situated from which the amounts of Defendant's liability can be ascertained.

## COUNT TWO

**(Environmental Differential Pay)**

**(By PLAINTIFF in her individual capacity and in her capacity as representative of all similarly situated members of the TSA EMPLOYEE CLASS against DEFENDANT)**

64.    Ms. Higgins incorporates by reference herein the allegations contained in paragraphs 1 through 63 above.

65.    Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations regarding wage schedules and rates for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

66.    The schedule of environmental differentials is contained in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.  *See* 5 C.F.R. § 532.511(d).

67.    The schedule of environmental differentials provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" in situations where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserims and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" or a four percent (4%) environmental differential when employees perform work with or in close

-18-

proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury." 5 C.F.R. § Pt. 532, Subpt. E, App. A.

68.     The regulations provide that "[a]n employee entitled to an environmental differential shall be paid an amount equal to the percentage rate authorized by the Office of Personnel Management for the category in which the working condition or hazard falls, multiplied by the rate for the second step of WG–10 for the appropriated fund employees and NA–10 for the nonappropriated fund employees on the current regular non-supervisory wage schedule for the wage area for which the differential is payable, counting one-half cent and over as a whole cent." 5 C.F.R. § 532.511(b)(1).

69.     An employee entitled to an environmental differential on the basis of hours in a pay status "shall be paid for all hours in a pay status on the day on which he/she is exposed to the situation." 5 C.F.R. § 532.511(b)(3).

70.     From January 2020 through the present and continuing to the present, Ms. Higgins, members of the TSA EMPLOYEE CLASS, and other similarly situated prevailing rate employees have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19.

71.     COVID-19 is a micro-organism for which safety devices, equipment, and other measures have not practically eliminated the potential for personal injury.

72.     Exposure to COVID-19 presents a "high degree hazard" because COVID-19 leads to potential personal injury such as death, or temporary, partial, or a complete loss of facilities or an inability to work due to acute, prolonged, or chronic disease.

73.     The CDC has determined that COVID-19 meets the definition for "severe acute respiratory syndromes" as set forth in Executive Order 13295, as amended by Executive Order 13375 and 13674 and therefore is a "quarantinable communicable disease." *See* Attachment to OPM Memorandum No. 2020-05, Coronavirus Disease 2019 (COVID-19): Additional Guidance (Mar. 7, 2020).  COVID-19 can cause symptoms ranging from mild illness to "severe illness and even death." *See Coronavirus (COVID-19) Frequently Asked Questions: What Is COVID-19?*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Basics (last updated Feb. 8, 2021).

74.     According to the CDC, there have been 27,542,421 cases of COVID-19, and 485,070 COVID-19-related deaths since January 21, 2020.  *See CDC COVID Data Tracker*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last updated Feb. 16, 2021).

75.     Ms. Higgins, members of the TSA EMPLOYEE CLASS, and other similarly situated prevailing rate employees have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

76.     Defendant has failed, and continues to fail to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the eight or four percent environmental differential listed in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations for each period when they have been exposed to COVID-19 through the performance of their official duties.

77.     By failing to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the eight or four percent environmental differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, Defendant has violated, and is continuing to violate the provisions of 5 U.S.C. § 5343(c)(4).

-20-

78.     As a consequence of Defendant's failure to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS environmental differential pay, Ms. Higgins and members of the TSA EMPLOYEE CLASS have been unlawfully deprived of environmental differential pay and other relief.

79.     As a result of the Defendant's willful and purposeful violations of Title 5, there has become due and owing to Ms. Higgins and each of the member of the TSA EMPLOYEE CLASS various amounts which have not yet been precisely determined.   The employment and work records for Ms. Higgins and each member of the TSA EMPLOYEE CLASS are in the possession, custody and control of Defendant, and Ms. Higgins is unable to state at this time the exact amounts owing to each of them.  Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. § 211(c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amounts of Defendant's liability can be ascertained.

## PRAYERS FOR RELIEF

WHEREFORE, Ms. Higgins and the TSA EMPLOYEE CLASS pray for judgment as follows:

1.     Enter judgment declaring that Defendant violated 5 U.S.C. § 5545(d) by failing and refusing to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the twenty-five percent (25%) hazardous duty pay differential for exposure to "virulent biologicals" listed in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, for each day that they have been required to work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without protective devices that afford complete protection.

2.     Enter judgment declaring that Defendant violated 5 U.S.C. § 5343(c) by failing and

refusing to pay Ms. Higgins and members of the TSA EMPLOYEE CLASS the eight or four percent environmental pay differential for exposure to hazardous micro-organisms listed in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations for each period that they have been required to work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 where the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserims, and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury.

3.      Certify a class consisting of all individuals who worked as Behavior Detection Officers, Transportation Security Officers, Lead Transportation Security Officers, and any other similarly situated position where their primary function is to screen and physically handle passengers and/or their belongings, who from January 2020 through the present and continuing and ongoing performed work with or in close proximity to objects, surfaces, and/or individuals infected with the novel coronavirus COVID-19 without sufficient protective devices, and were not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential for exposure to hazardous micro-organisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

4.      Order a complete and accurate accounting of all the compensation to which Plaintiffs are entitled;

5.      Award Ms. Higgins and members of the TSA EMPLOYEE CLASS monetary damages in the form of back pay compensation plus interest;

6.      Award Ms. Higgins and all other TSA EMPLOYEE CLASS members their reasonable attorneys' fees to be paid by Defendant, and the costs of this action; and

7.      Grant such other legal and equitable relief as may be just and proper.

Respectfully submitted,

**/s/ Michael Morrison**
Michael Morrison (Counsel of Record)
ALEXANDER MORRISON + FEHR
1900 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 394-0888
(310) 394-0811 facsimile
mmorrison@amfllp.com


Kevin J. Cole
PARKER COLE, P.C.
6700 Fallbrook Avenue, Suite 207
West Hills, CA 91307
(818) 292-8800
(818) 292-8337 facsimile
kevin@parkercolelaw.com

*Attorneys for Plaintiffs*

Dated: February 18, 2021